Case 5:26-cv-00060   Document 20   Filed 02/03/26 in TXSD   Page 1 of 17

United States District Court
Southern District of Texas
**ENTERED**
February 03, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| **DARWIN JOSE CRUZ-REYES,** § | |
| § | |
| Petitioner, § | |
| § | |
| VS. § | **CIVIL ACTION NO. 5:26-CV-60** |
| § | |
| **PAMELA BONDI,** *et al.*, § | |
| § | |
| Respondents. § | |

## MEMORANDUM AND ORDER

Pending before the Court is Petitioner Darwin Jose Cruz Reyes's Petition for Writ of Habeas Corpus, (Dkt. 1), challenging the lawfulness of his detention by Immigration and Customs Enforcement (ICE) officials with the Department of Homeland Security (DHS).

For the reasons set forth below, Petitioner's Petition for Writ of Habeas Corpus, (Dkt. 1), is GRANTED. Respondents' Response to the Petition for Writ of Habeas Corpus and Motion for Summary Judgment, (Dkt. 14), is DENIED.

## BACKGROUND

**A. DHS Policy for Detention of Applicants for Admission**

This case is one of a growing number across the country that implicate a recent change to the Department of Homeland Security's interpretation of the applicable statutory authority for the detention of noncitizens classified as applicants for admission. *See, e.g., Fuentes v. Lyons*, 5:25-cv-00153, Dkt. No. 15 (S.D. Tex. Oct. 16, 2025). On July 8, 2025, a new policy entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission" was announced. *See* ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission, American Immigration Lawyers Association (July 8, 2025), https://www.aila.org/library/ice-

memo-interim-guidance-regarding-detention-authority-for-applications-for-admission; (s*ee* Dkt. 1 at 8, 17, Attach. 6.)[1] The memo states that 8 U.S.C. § 1225(b)(2), rather than 8 U.S.C. § 1226(a), is the applicable immigration detention authority for all noncitizens who are classified as applicants for admission, regardless of their manner of entry into the country or their time present in the United States prior to apprehension. (*See id*.) Shortly thereafter, on September 5, 2025, the Board of Immigration Appeals (BIA) issued a published decision in line with this interim guidance, holding that Immigration Judges (IJs) lack authority to hear bond requests or to grant bond to noncitizens who are present in the United States without admission because they are subject to mandatory detention under 8 U.S.C. § 1225(b)(2). (*See id.*); *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). Petitioner's case, like many others before the Court, arises out of his recent reapprehension and redetention by ICE pursuant to these changes.

## B. Mr. Cruz Reyes

Petitioner Darwin Cruz Reyes ("Mr. Cruz Reyes") is a 38-year-old citizen of El Salvador, (Dkt. 1 at 7, 12.) Mr. Cruz Reyes has lived in the United States for nineteen years since he entered without inspection in 2007. (*Id*. at 7, 13.) Since then, he has worked steadily as a self-employed truck driver in the central and south Texas area and built his life and family in this country. (*Id*. at 7, 13.) He is the father of three U.S.-citizen children: ages 10, 6, and 5. (*Id.*) He married the children's mother in 2015 in Hays County, Texas, and they raise their children together in their home of Cedar Creek, Texas. (*Id.* at 7.) One of his children suffers speech and developmental impediments. (*Id.*)

---

[1] The Parties have labeled their sub-filings as "Exhibits." However, the Court will use "Attachment" to refer to these sub-filings in accordance with official docket entries. The Court will use the page numbers auto-generated by CM/ECF in citations to the docket entries.

Mr. Cruz Reyes's first contact with ICE occurred on July 9, 2011, in Austin, Texas, after he ran a traffic light and local police discovered an outstanding warrant for traffic offenses. (*Id.*) ICE released Mr. Cruz Reyes two days later on an Order of Release on Recognizance under 8 U.S.C. § 1226(a), noting that "[P]ursuant to the authority contained in section 236 [of the INA] I have determined . . . you shall be released on your own recognizance." (*Id.*, Attach. 1.) ICE also issued Petitioner a Notice to Appear (NTA) in immigration court, commencing removal proceedings against him. (*Id.*, Attach. 2.; Dkt. 14 at 2.) Mr. Cruz Reyes then hired an immigration attorney and attended his immigration court hearings as a part of his removal proceedings, including filing of an application for Cancellation of Removal with the immigration court to allow him to remain in the United States with his family due to the exceptional and extremely unusual hardship that his family would suffer if he were deported. (Dkt. 1 at 7, 13–14); *see* 8 U.S.C. § 1229b(b)(1); *Matter of Monreal*, 23 I&N Dec. 56, 62 (BIA 2001) ("[T]he hardship to an alien's relatives, if the alien is obliged to leave the United States, must be 'substantially' beyond the ordinary hardship that would be expected when a close family member leaves this country. Cancellation of removal under section 240A(b) of the Act is to be limited to 'truly exceptional' situations.")

Mr. Cruz Reyes received work authorization from his application while awaiting a final resolution of his immigration case, and he currently maintains a valid Texas Commercial Driver License since he drives trucks for a living. (Dkt. 1, Attach. 5.) He has no criminal convictions on his record. (*Id*. at 14.) His next non-detained immigration court hearing to determine the merits of his application for Cancellation of Removal would have occurred on February 11, 2027, in the San Antonio Immigration Court. (*Id.*, Attach. 4.)

However, on January 5, 2026, DHS officials arrested Mr. Cruz Reyes at a checkpoint in Sarita, Texas, which he had passed in his truck for work without incident many times before. (*See id.* at 7, 13; Dkt. 14 at 2.) At that time, ICE did not issue any new arrest documents such as a warrant, nor did it give him any formal withdrawal of his prior Order for release on his own recognizance from 2011, nor did it make any new findings that, after nearly fifteen years of release on his own recognizance, Mr. Cruz Reyes now constitutes a flight risk or danger. (Dkt. 1 at 7–8, 13.) Instead, ICE subjected him to mandatory detention under 8 U.S.C. § 1225(b)(2), claiming for the first time based on ICE's policy memorandum from July 8, 2025, and *Matter of Yajure Hurtado* that Mr. Cruz Reyes is subject to mandatory detention. (*Id.* at 7–8.)

Mr. Cruz Reyes is currently detained at the Webb County Detention Center in Laredo, Texas. (*Id.*, Attach. 3.) ICE continues to use the same charges from his 2011 NTA, namely that Mr. Cruz Reyes is "an alien present in the United States who has not been admitted or paroled." (*Id.*, Attach. 2.) Because of his apprehension, Mr. Cruz Reyes's non-detained immigration court hearing was cancelled, and has yet to be rescheduled for another hearing with the detained Pearsall Immigration Court where his case is now venued. (Dkt. 18 at 4); *see also* Executive Office of Immigration Review (EOIR), Automated Case Information, https://acis.eoir.justice.gov/en/caseInformation, (last visited Feb. 2, 2026.) His detention has impaired his ability to prepare for his future hearing on his application for Cancellation of Removal because it has created challenges in gathering hardship evidence and coordinating with counsel and witnesses. (Dkt. 1 at 13, 14.) Additionally, Mr. Cruz Reyes's family has suffered without him. (Dkt. 1 at 9.) His three children depend on him for emotional and financial support, especially his son, who has developmental needs that require additional care. (*Id.* at 9, 14.)

On January 15, 2026, Mr. Cruz Reyes filed for a writ of habeas corpus challenging his detention under 8 U.S.C. § 1225(b)(2) as unlawful and requesting that the Court order his release from custody immediately, or in the alternative, order that he be provided a bond hearing. (*Id.* at 9–10, 29–31.) In his Petition, Mr. Cruz Reyes alleges that Respondents unlawfully detained him pursuant to mandatory detention under 8 U.S.C. § 1225(b)(2) in violation of the Due Process Clause of the Fifth Amendment and in violation of the Immigration and Nationality Act (INA). (Dkt. 1 at 23–26); *see also* 8 U.S.C. §§ 1226(a), 1225(b)(2). Additionally, he alleges that Respondents have violated the Administrative Procedures Act (APA) and the Suspension Clause of the Constitution. (Dkt. 1 at 26–29.)

## **Legal Standard**

A district court has jurisdiction to grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law. 28 U.S.C. § 2241. "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). The writ of habeas corpus is "perhaps the most important writ known to the constitutional law . . . affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963). Accordingly, a district court's habeas jurisdiction includes challenges to the lawfulness of immigration-related detention. *See, e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 516–17 (2003); *Baez v. Bureau of Immigr. & Customs Enf't*, 150 F. App'x 311, 312 (5th Cir. 2005) (unpublished); *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005) (unpublished).

**Discussion**

**A. Section 1225(b)(2) Does Not Apply to Mr. Cruz Reyes**

The imposition of mandatory detention under § 1225(b)(2) on Mr. Cruz Reyes, a long-term resident who was arrested in the interior of the United States, is inconsistent with the structure and text of the INA and violates the most basic principles of due process. Congress created a distinct detention framework in 8 U.S.C. § 1226(a) for noncitizens like Petitioner, which provides for discretionary release and an opportunity for a custody review and bond determination by an Immigration Judge, as opposed to its framework for mandatory detention in 8 U.S.C. § 1225(b). DHS's erroneous interpretation of law under its policy guidance and *Matter of Yajure Hurtado* cannot alter this statutory framework. The Constitution, the INA, and basic principles of fairness do not permit it.

*1. Statutory Background*

Congress enacted 8 U.S.C. §§ 1226(a) and 1225(b)(2) in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA). Pub. L. No. 104–208, div. C, §§ 302–03, 110 Stat. 3009-546, 3009-582 to 3009-583, 3009-585. The Supreme Court has explained that Section 1226(a) "sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of an alien 'pending a decision on whether the alien is to be removed from the United States.'" *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (quoting § 1226(a)). Under 8 U.S.C. § 1226(a), a noncitizen is generally entitled to a bond hearing at the outset of their detention. *See id.* ("the Attorney General 'may release' an alien detained under § 1226(a) 'on bond or conditional parole'" (quoting 8 U.S.C. § 1226)). In contrast, "[a]liens who are instead covered by § 1225(b)(2) are detained pursuant to a different process" and "'shall be detained for a [removal] proceeding' if an immigration officer 'determines that [they are] not clearly and beyond a doubt entitled to be

admitted' into the country." *Id.* (quoting § 1225(b)(2)(A)). Therefore, "noncitizens detained under section 1225(b)(2) must remain in custody for the duration of their removal proceedings, while those detained under section 1226(a) are entitled to a bond hearing before an IJ at any time before entry of a final removal order." *Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1306 (W.D. Wash. 2025).

For decades, noncitizens who entered without inspection and were placed in standard removal proceedings received bond hearings unless covered by mandatory detention under § 1226(c). *See id.* at 1333. The practice aligned with earlier law in which non-arriving noncitizens were entitled to a custody hearing before an immigration judge or other officer. *See* 8 U.S.C. § 1252(a) (1994); H.R. Rep. No. 104-469, pt. 1, at 229 (1996) (noting § 1226(a) "restates" prior detention authority). After IIRIRA, EOIR promulgated regulations clarifying that, in general, people who entered without inspection and were placed in § 240 proceedings are detained under § 1226(a), not § 1225. Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10,312, 10,323 (Mar. 6, 1997).

This remained the interpretation of sections 1226(a) and 1225(b)(2) until the recent changes by DHS in its July 8, 2025 policy memorandum and the subsequent precedential decision by the BIA in *Matter of Yajure Hurtado*.

*2. Maldonado Bautista Class Action*

In response to the many claims arising out of the change in the applicable detention authority for noncitizens like Petitioner, the Central District of California certified a national class in *Maldonado Bautista v. Santacruz*, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025) on November 25, 2025, pertaining to this very issue:

>**Bond Eligible Class**: All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination.

*Maldonado Bautista*, 2025 WL 3288403, at *1. Prior to granting class certification, the Central District of California granted partial summary judgment on the named petitioners' claims, holding that the government's interpretation of the Immigration and Nationality Act (INA) was unlawful in so far as it subjected petitioners to mandatory detention under § 1225(b)(2) rather than § 1226(a). Several days later, the court expressly "extend[ed] the same declaratory relief granted to [individual] Petitioners to the Bond Eligible Class as a whole." *Maldonado Bautista*, 2025 WL 3288403, at *9.

On December 18, 2025, the Central District of California clarified its prior order and entered a final judgment under Rule 54(b) of the Federal Rules of Civil Procedure, holding that "Bond Eligible Class members are detained under 8 U.S.C. § 1226(a) and are not subject to mandatory detention under § 1225(b)(2)." *Maldonado Bautista v. Santacruz*, 2025 WL 3713987, at *1 (C.D. Cal. Dec. 18, 2025), *judgment entered sub nom. Maldonado Bautista v. Noem*, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025). Despite the judgment in the class action, DHS maintains that Petitioners like Mr. Cruz Reyes must be held in mandatory detention under *Matter of Yajure Hurtado*.

It is a "basic proposition that all orders and judgments of courts must be complied with promptly." *Maness v. Meyers*, 419 U.S. 449, 458 (1975). A final judgment in a class action is binding on all class members in subsequent decisions under the basic principles of res judicata and collateral estoppel. *Cooper v. Fed. Rsrv. Bank of Richmond*, 467 U.S. 867, 874 (1984) ("A

judgment in favor of either side is conclusive in a subsequent action between them on any issue actually litigated and determined, if its determination was essential to that judgment.").

Upon review of Petitioner's claims before the Court, the Court finds that the factual record supports that Petitioner is a member of the "Bond Eligible Class" because Mr. Cruz Reyes entered the United States without inspection, was not apprehended upon arrival, has been living in the United States for 19 years, and is not subject to detention on the admission of either party under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231.[2] (*See* Dkt. 1 at 8; Dkt. 14 at 7; Dkt. 18 at 2, 7.) Thus, the Court holds that because Petitioner is a member of the Bond Eligible Class, he is entitled to the declaratory relief entered by the Central District of California that his current detention under 8 U.S.C. § 1225 is unlawful. *See Hernandez v. Otay Mesa Detention Center*, 2025 WL 3724913, at *1 (S.D. Cal. Dec. 24, 2025) (Noting that Respondents conceded that because petitioner was a member of the bond eligible class he was considered detained under 8 U.S.C. § 1226(a), pursuant to the final judgment entered in *Maldonado Bautista*); *see also Mohammadi v. Larose*, 2025 WL 3731737, at *2 (S.D. Cal. Dec. 26, 2025) (holding that the final judgment issued in *Maldonado Bautista* provided independent support for why petitioner was not subject to mandatory detention). Consequently, this Court may craft an injunctive remedy in accordance with that determination.

### 3. Independent Statutory Analysis

Additionally, the Court independently reasons that equitable relief is warranted in Petitioner's case. The principal issue in this case is one of statutory interpretation: whether Petitioner has been lawfully detained under 8 U.S.C. § 1225(b)(2), which prescribes mandatory detention during removal proceedings, or if he instead remains subject to 8 U.S.C. § 1226(a) as he

---

[2] Respondents do not dispute that "Petitioner is a member of the *Maldonado Bautista* class." (Dkt. 14 at 7.)

was for the previous fifteen years that he was released on an order of release on his own recognizance.

The parties' arguments regarding statutory construction mirror those that this Court addressed previously in *Fuentes v. Lyons*, 5:25-cv-00153, Dkt. No. 15 (S.D. Tex. Oct. 16, 2025) and that numerous other courts across this district and across the country have considered. *See Buenrostro-Mendez v. Bondi*, 2025 WL 2886346, at *3 (S.D. Tex. Oct. 7, 2025) (collecting cases). Respondents argue that a plain language reading of the relevant INA provisions, developments in agency interpretation of the INA, prior legal precedent, and persuasive decisions support a reading of § 1225(b)(2) rather than § 1226(a) as the appliable statutory authority for Petitioner's detention. (Dkt. 14 at 3–6). Thus, "[t]he Court need not repeat its analysis, especially where that analysis is consistent with 'the overwhelming majority' of courts to consider these issues in recent months." *Erazo Rojas v. Noem,* 2025 WL 3038262, at *1 (W.D. Tex. Oct. 30, 2025) (quoting *Buenrostro-Mendez,* 2025 WL 2886346, at *3).

Because Respondents have failed to offer controlling precedent that would justify reaching a different result as to the relevant detention authority in this case, the Court is unpersuaded to alter its prior position with respect to this issue. In accordance with its prior analysis, the Court holds that because Petitioner is a noncitizen who previously entered the United States and has been residing in the United States, the applicable authority for his detention is 8 U.S.C. § 1226(a). This finding is based on the statutes' plain text, congressional intent, canons of statutory interpretation, legislative history, and longstanding agency practices. *See Fuentes v. Lyons*, 5:25-cv-00153, Dkt. No. 15 (S.D. Tex. Oct. 16, 2025); *see also Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1304 n.3 (W.D. Wash. Sept. 30, 2025) (collecting cases).

Thus, the Court holds Mr. Cruz Reyes cannot be lawfully detained under 8 U.S.C. § 1225(b)(2).[3] Having made this finding, the Court now turns to the appropriate remedy for this violation and considers Petitioner's request for immediate release.

**B. Remedy**

Next, the Court turns to the appropriate remedy for DHS's erroneous application of 8 U.S.C. § 1225(b)(2) to Mr. Cruz Reyes. In its previous treatment of this issue, the Court has generally ordered that similarly situated noncitizens be afforded a prompt bond hearing in accordance with a determination that 8 U.S.C. § 1226 governs the detention of individuals who are apprehended in the interior of the United States. However, upon further consideration, the Court now joins other district courts across the country in finding that the significant violation of Petitioner's due process rights and other prudential concerns weigh in favor of ordering Petitioner's immediate release.

First, the Court is persuaded to follow other district courts that have declined to order Respondents to conduct a bond hearing when Respondents maintain that 8 U.S.C. § 1226 is inapplicable to Petitioner's detention. *E.g.*, *Guzman v. Bondi*, 2025 WL 3724465, at *6 (W.D. Tex. Dec. 23, 2025). Here, Respondents do not claim that Mr. Cruz Reyes is subject to 8 U.S.C. § 1226, nor do Respondents assert a reason for altering the prior determination from 2011, made in accordance with 8 U.S.C. § 1226, that Mr. Cruz Reyes should be released on his own recognizance pending the outcome his removal proceedings. Therefore, because the Court has determined that Petitioner is not detained pursuant to § 1225(b), "[a]bsent an assertion by Respondents that they are detaining Petitioner under § 1226, the Court has no need to consider whether § 1226 is a valid

---

[3] The Court will decline to address Petitioner's APA and Suspension Clause challenges at this time.

basis for Petitioner's current detention." *Mercado v. Lyons*, 2025 WL 3654268, at *6 (W.D. Tex. Dec. 11, 2025) (citing *Martinez v. Hyde*, 792 F. Supp. 3d 211, 223 n.23 (D. Mass. 2025); *see also Estupinan Reyes v. Warden Bobby Thompson, et al.*, 2025 WL 3654265, at *4 (W.D. Tex. Dec. 12, 2025); *Silva v. Bondi*, 2026 WL 90060, at *8 n.10 (W.D. Tex. Jan. 12, 2026). DHS has taken the position that IJs should not conduct bond hearings for noncitizens like Petitioner under *Matter of Yajure-Hurtado* because DHS is detaining them under mandatory detention. Given this, the Court finds it prudent to abstain from ordering DHS to treat Petitioner as subject to 8 U.S.C. § 1226. Rather than seek out an alternative statutory authority and process for determining whether Petitioner's detention is appropriate itself, the Court will take Respondents arguments as they are before the Court. *See Vargas Bondi*, 2025 WL 3300446, at *5 (W.D. Tex. Nov. 12, 2025), *report and recommendation adopted sub nom*. *Vargas v. Bondi*, 2025 WL 3300141 (W.D. Tex. Nov. 26, 2025).

Second, due process concerns weigh heavily in favor of granting immediate release. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. It requires "at a minimum . . . that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313, (1950). That noncitizens are entitled "to due process of law in the context of removal proceedings" is "well established." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (per curiam) (quoting *Reno v. Flores*, 507 U.S. 292, 306, (1993)) (citation modified).

In the face of unlawful detention, the "typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). Petitioner has demonstrated a profound liberty

interest in his freedom from civil detention and a concrete, ongoing deprivation of that liberty without any process provided by Respondents to justify his detention. Therefore, his immediate release is appropriate.

For bond hearings under § 1226(a) "'the implementing regulations provide that '[s]uch hearings . . . are provided for the purpose of custody *re*-determination—a hearing held by an immigration judge *after* ICE makes its initial decision to detain.'" *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025) (emphasis added) (quoting *Chipantiza-Sisalema v. Francis*, 2025 WL 1927931, at *3 (S.D.N.Y. July 13, 2025)); *see also* 8 C.F.R. 236.1(d)(1). Therefore, a bond "hearing is no substitute for the requirement that ICE engage in a 'deliberative process prior to, or contemporaneous with,' the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause." *Gonzalez v. Joyce,* 2025 WL 2961626, at *5 (S.D.N.Y. Oct. 19, 2025) (citations omitted).

The opportunity for this initial determination is imperative. The Court agrees that "[t]he suggestion that government agents may sweep up any person they wish without consideration of dangerousness or flight risk, so long as the person will, at some unknown future date, be allowed to ask some other official for his or her release, offends the ordered system of liberty that is the pillar of the Fifth Amendment." *Id.*; *see also Rodriguez-Acurio v. Almodovar*, 2025 WL 3314420, at *31 (E.D.N.Y. Nov. 28, 2025) ("[A] post-deprivation bond hearing before a DHS officer or even an immigration judge would provide no genuine opportunity to relief because the detention without adequate pre-deprivation procedures has already been carried out."); *J.U. v. Maldonado*, 2025 WL 2772765, at *3 (E.D.N.Y. Sept. 29, 2025) ("[T]here was no 'initial decision' as ICE's detention of Petitioner did not comport with the implementing regulations and § 1226(a); thus, a bond hearing for a post-deprivation review is wholly inadequate to remedy that unlawful detention.")

In making this determination that immediate release is appropriate, the Court also looks to the test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976) for determining the adequacy of the process afforded to Petitioner at the time of his detention. Under this balancing test, determining the specific dictates of due process generally requires evaluation of "(1) the private interest that will be affected by the official action, (2) a cost-benefit analysis of the risks of an erroneous deprivation versus the probable value of additional safeguards, and (3) the Government's interest, including the function involved and any fiscal and administrative burdens associated with using different procedural safeguards." *Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (citing *Mathews*, 424 U.S. at 335.).

On the first *Mathews* prong, Petitioner's private interest in his release from detention cannot be overstated. "[T]he interest in being free from imprisonment" is "the most significant liberty interest there is." *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (citing *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004)); *Youngberg v. Romeo*, 457 U.S. 307, 316 (1982) ("[L]iberty from bodily restraint always has been recognized as the core of the liberty protected by the Due Process Clause from arbitrary governmental action.") Petitioner has lived free from custody in the United States for nearly twenty years and built deep family and community ties. He cares for his wife and his three elementary-school-aged children. His detention has impaired his ability to earn a living as a truck driver and caused his family to suffer without him because his three children depend on him for emotional and financial support. Moreover, his detention has impaired his ability to prepare for his future hearings on his application for Cancellation of Removal and communicate with his immigration counsel.

On the second *Mathews* prong, the lack of any notice, opportunity for Petitioner to challenge his detention, or individualized determination by DHS when he was detained under

mandatory detention creates a very high risk of erroneous deprivation of liberty that cannot be mitigated through only a post-deprivation hearing. Mr. Cruz Reyes was released on his own recognizance for fifteen years based on a finding that he presented neither a danger nor a flight risk, and there is no evidence before the Court that circumstances have changed. Thus, the need for an individualized determination of whether detention is warranted at the time of arrest is required to protect Petitioner's liberty interest. *See Hyppolite v. Noem*, 2025 WL 2829511, at *14 (E.D.N.Y. Oct. 6, 2025) ("[T]he record certainly establishes that there is, at the very least, a substantial likelihood that Respondents would have failed to meet their burden of proving that [Petitioner] constituted either a flight risk or a danger to the community. In other words, the risk that [Petitioner] was erroneously deprived of his liberty through Respondents' failure to provide him with a pre-detention hearing is exceedingly high."); *see also J.U.,* 2025 WL 2772765, at *10.

Lastly, on the third *Mathews* factor, Petitioner requests only that ICE comply with the process for evaluating his detention that is already provided in 8 U.S.C. § 1226 and resulted in his release on his own recognizance in 2011, creating minimal burden on ICE to implement its already existing procedures. Moreover, Respondents have proffered no evidence showing that Petitioner is a flight risk or a danger to the community, nor have they shown that anything has changed since Mr. Cruz Reyes was released on his own recognizance in 2011. Thus, the Government's interest in continuing to detain Petitioner is further diminished where, as here, the Petitioner has no criminal record and has significant ties—factors that bear directly on flight risk and dangerousness. *See Pinchi v. Noem*, 2025 WL 1853763, at *2 (N.D. Cal. July 4, 2025). Therefore, an evaluation of the *Mathews* factors supports a finding that due process requires immediate release for Petitioner.

The Court is now persuaded that a post-deprivation bond hearing cannot cure the core violation of Mr. Cruz Reyes's due process rights that occurred when he was unlawfully detained under a mandatory detention provision without any process for such determination. Ordering a bond hearing under § 1226(a), after Mr. Cruz Reyes has been taken into custody, cannot make up for the lack of an initial, individualized determination process by ICE.

Thus, immediate release with additional safeguards against unjustified redetention in violation of this Court's determinations that Petitioner is not subject to mandatory detention under § 1225(b) is the appropriate remedy.

## Conclusion

For the foregoing reasons, Petitioner's Petition for Writ of Habeas Corpus, (Dkt. 1), is **GRANTED**. Petitioner's Petition for Temporary Restraining order, (Dkt. 19), is **DENIED** as moot. Respondents' Response to the Petition for Writ of Habeas Corpus and Motion for Summary Judgment, (Dkt. 14), is **DENIED**.

1. Respondents are **ORDERED** to **RELEASE** Petitioner from custody immediately, under reasonable conditions of release, and to submit a status report to the Court confirming Petitioner's release **within 24 hours** of the date of this Order.

2. Respondents must notify Petitioner's counsel of the exact time and location of Petitioner's release **no less than three hours** prior to Petitioner's release from custody.

3. If Petitioner is redetained, all applicable regulations and procedures must be followed, including that Petitioner be afforded a bond hearing pursuant to 8 U.S.C. § 1226(a).

4. Within two weeks of the date of this Order, the parties shall **FILE** advisories with the Court indicating whether the parties oppose entry of a final judgment in this case.

IT IS SO ORDERED.

SIGNED this February 3, 2026.

                                                                         _____

                                                                        Diana Saldaña
                                                                        United States District Judge